IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| REBECCA HEICHEL, | CIVIL ACTION |
| Plaintiff, | |
| v. | |
| MARRIOTT HOTEL SERVICES, INC., MARRIOTT INTERNATIONAL, INC., HENSEL PHELPS CONSTRUCTION CO., COOPER CARRY, INC., Defendants. | NO. 18-1981 |

## MEMORANDUM OPINION

Plaintiff Rebecca Heichel brings this negligence action against Defendants Marriott Hotel Services, Inc. and Marriott International, Inc. (collectively, "Marriott"), as well as Hensel Phelps Construction Co., and Cooper Carry, Inc., for injuries stemming from a slip and fall at a Washington, D.C. hotel. Marriott's motion for summary judgment was previously denied. Defendants Cooper Carry and Hensel Phelps separately move for summary judgment. For the reasons that follow, their motions shall be granted.

### I.  BACKGROUND

On September 2, 2017, Mikayla Miller, then 13 years old, slipped and fell in the lobby of the Marriott Marquis Hotel in Washington, D.C., where she was a guest. Miller's mother, Plaintiff Heichel, brings this suit as Miller's parent and natural guardian.

The hotel was constructed between 2010 and 2014, and opened to the public in May 2014. Cooper Carry is an architectural firm that was hired by Marriott to provide architectural services during the hotel's construction, while Hensel Phelps was hired to serve as the design builder for construction.

The undisputed facts establish that the hotel lobby flooring and staircases are primarily made up of white polished sivec marble. In 2012, during construction, Cooper Carry prepared

specifications for Marriott providing that level surfaces would have a minimum static coefficient of friction of .60.[1]  On April 23, 2013, Hensel Phelps submitted a report with test results for a sample of polished sivec marble to Cooper Carry, which indicated that the sample of marble had the average static coefficient of friction of .74 (as received) and .75 (after cleaning) when dry, and .52 (as received and after cleaning) when wet.  Cooper Carry subsequently stamped the report, indicating that the sample of marble did not meet the specifications and required a non-slip sealer.  On July 15, 2013, Hensel Phelps emailed a new report to Cooper Carry, indicating that an anti-slip solution had been applied to the sample of marble, and the new testing results where .76 (as received) and .79 (after cleaning) when dry, and .55 (as received and after cleaning) when wet.

On August 27, 2013, a Hensel Phelps representative sent an email to Marriott representatives, seeking approval to install the white polished sivec marble—even though the sample fell below the specifications.  On September 27, 2013, a Marriott representative replied, copying a Cooper Carry representative, stating, "we have determined that the slip resistance factor indicated in acceptable as long as the [anti-slip solution] is applied per the manufacturer's direction."  A Hensel Phelps representative subsequently forwarded the email to a subcontractor, again copying a Cooper Carry representative, stating that "Marriott has agreed to allow the construction team to proceed with the stone submittals as is with the additive."  Subsequently, white polished sivec was installed in the hotel lobby.

Several years later, on September 2, 2017, Plaintiff and her mother came to stay at the hotel.  That day, it had rained.  Plaintiff asserts that the marble floor was slick, and that there

---

[1] "Roughly speaking, the coefficient of friction of a surface is a number that indicates how slippery that surface is. The smaller the coefficient of friction is for a given surface, the more slippery that surface is." *Reeves v. Washington Metro. Area Transit Auth.*, 135 A.3d 807, 809 n.2 (D.C. 2016).

2

were no mats or signs to abate or advise of the slippery conditions inside the hotel. Plaintiff and her mother both testified that there was one mat, just inside the door, which was soaked through, and which they walked over just before the accident occurred. Plaintiff then slipped and fell on the hotel lobby floor. After the fall, Plaintiff avers that she experienced medical difficulties, including back pain and post-concussive symptoms.

## II. LEGAL STANDARDS

Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir. 1989). Materiality of facts is determined by reference to the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute "exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *U.S. ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89, 93 (3d Cir. 2018) (internal quotation marks omitted). "[A]ll reasonable inferences" must be drawn in the non-moving party's favor. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

## III. ANALYSIS

Plaintiff asserts that Cooper Carry and Hensel Phelps negligently installed an unreasonably slippery floor. She points out that a sample of the marble that was installed had a coefficient of friction of .55 when wet, which was below Marriott's specifications that flooring have a .60 coefficient of friction. She argues that Cooper Carry and Hensel Phelps were aware that the flooring was substandard, and installed it nonetheless. This substandard flooring, she asserts, caused her fall when she walked across it with wet shoes. While, separately, Plaintiff asserts that the Marriott negligently maintained the lobby on the day of the accident, the only question here is whether Plaintiff has made out a sufficient claim against Cooper Carry and Hensel Phelps that their installation of the flooring was negligent.

3

To prevail on a claim of negligence, a plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) breach of that duty; and, (3) injury to the plaintiff that was proximately caused by the breach." *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1038 (D.C. 2014) (internal quotation marks omitted).[2] Where a defendant owes a plaintiff a duty of care, under the law of D.C., a plaintiff often is required to put on expert testimony to establish the applicable standard of care. *See Briggs v. Washington Metro. Area Transit Auth.*, 481 F.3d 839, 845 (D.C. Cir. 2007). Here, Plaintiff has failed to articulate a duty owed by Cooper Carry to Plaintiff, and, with respect to both Cooper Carry and Hensel Phelps, Plaintiff has not proffered sufficient expert testimony to establish the applicable standard of care.

### A. Cooper Carry's Duty to Plaintiff

Cooper Carry argues that it does not owe Plaintiff a duty of care, in that Cooper Carry did not maintain the hotel, that Plaintiff's accident occurred several years after construction was completed, that it was not responsible for the installation of the flooring, and that it in fact rejected the flooring samples only to have those samples later approved by Marriott and installed by Hensel Phelps. Depending on the particulars of the case, under D.C. law, architects and others involved in construction may owe a duty of care to individuals and members of the public that enter the building. *See, e.g.*, *Caldwell v. Bechtel, Inc.*, 631 F.2d 989, 998-99 (D.C. Cir. 1980). However, Plaintiff, in response to Cooper Carry's motion, fails to articulate anything relevant to Cooper Carry's duty of care. Instead, Plaintiffs states only that "Defendant *Marriott Int.* . . . had a duty to warn, or in the alternative to place counter measures to protect patrons from what they [k]new to be a slippery surface, especially when wet." Because Plaintiff has failed to establish that Cooper Carry, rather than any other defendant, owed her a duty of care, summary

---

[2] As the Court previously decided, this action is governed by the law of the District of Columbia.

judgment in favor of Cooper Carry is appropriate.[3]

## B. Expert Testimony Requirement to Establish Standard of Care

Plaintiff's claim against both Cooper Carry and Hensel Phelps fails for the separate reason that she has not proffered expert testimony establishing the applicable standard of care.

Under D.C. law, "[i]n a context that is within the realm of common knowledge and everyday experience, the plaintiff is not required to adduce expert testimony either to establish the applicable standard of care or to prove that the defendant failed to adhere to it." *Night & Day Mgmt.*, 101 A.3d at 1038-39 (internal quotation marks omitted). "However, if the subject of the standard of care is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average lay juror, expert testimony is required in order for a plaintiff to meet this burden." *Id.* at 1039 (internal punctuation omitted). In such cases, the plaintiff "must show that the defendant violated a national standard of care." *Casey v. McDonald's Corp.*, 880 F.3d 564, 569 (D.C. Cir. 2018). "A national standard of care must describe a specific standard that has been accepted in the industry." *Id.* (internal quotation marks omitted). "[F]ailure to establish a standard of care is fatal to a negligence claim," and "entitle[s] [the defendant] to summary judgment." *Briggs*, 481 F.3d at 848.

Plaintiff's arguments that expert testimony is not needed here, and that, even if it is, she has offered sufficient testimony, are not supported by D.C. law.

### i. *Expert Testimony Required to Establish Standard of Care*

Under D.C. law, expert testimony is generally required "to establish the standard of care in negligence cases that involve issues of safety, security and crime prevention." *Night & Day*

---

[3] Hensel Phelps does not generally disclaim a duty to Plaintiff. Though it does passingly assert that it owed no duty as to "the operation, management, or maintenance of the building," it makes no argument as to whether its role in the construction may give rise to a duty to Plaintiff. In the absence of argument, the Court need not address whether Plaintiff has articulated a sufficient duty owed by Hensel Phelps.

5

*Mgmt.*, 101 A.3d at 1039 (internal quotation marks omitted). "The D.C. Court of Appeals has required expert testimony in a number of cases that, on first blush, appear to be within the realm of common knowledge," including, for example, "tightness of handcuffs," "cushioning for the ground underneath playground monkey bars," and "installation of a crosswalk, instead of a stop sign, light, or crossing guard." *Briggs*, 481 F.3d at 845.

Although Plaintiff asserts that no expert testimony is needed here, opinions regarding similar negligence cases, which hinge on discussions of coefficients of friction, counsel to the contrary. *See, e.g.*, *Frazza v. United States*, 529 F. Supp.2d 61, 70 (D.D.C. 2008); *Haney v. Marriott Int'l, Inc.*, 2007 WL 2936087, at *6 (D.D.C. Oct. 9, 2007). As these cases observe, "[w]hile an average person may be familiar with the experience of slipping on a wet surface, determining the coefficient of friction of that surface is certainly outside the realm of common knowledge and everyday experience." *Frazza*, 529 F. Supp.2d at 70 (internal quotation marks omitted); *see also Haney*, 2007 WL 2936087, at *6 ("Proof of compliance with suitable ASTM standards and the appropriate coefficients of friction for bathtub surfaces are issues that are well beyond the ken of the average person. . . . While taking a shower is indeed a common situation for a lay person, measuring the coefficient of friction in the tub while doing so is most certainly not.") (internal quotation marks omitted). Accordingly, to establish that Cooper Carry and Hensel Phelps were negligent in installing flooring with a coefficient of friction of .55 when wet, Plaintiff must present expert testimony.

Further, while Plaintiff repeatedly asserts that Defendants failed to abide by Marriott's own specifications that called for a static coefficient of friction of .60, "company rules are not conclusive or wholly definitive of the standard of care." *Whiteru v. Washington Metro. Area Transit Auth.*, 258 F. Supp.3d 175, 189 (D.D.C. 2017) (internal quotation marks omitted); *see also Casey*, 880 F.3d at 569 ("[I]nternal manuals may not, on their own, establish the national

6

standard.") (internal quotation marks omitted). While "such policies are admissible as *bearing on the* standard of care," *id.*, "expert testimony is still required to establish that the internal policy embodied the national standard of care and not a higher, more demanding one," *Frazza*, 529 F. Supp.2d at 75 (internal brackets omitted).

Accordingly, Plaintiff must present expert testimony to establish Cooper Carry and Hensel Phelps' standard of care.

### ii. *Plaintiff's Expert Testimony Insufficient to Establish Standard of Care*

"When an expert witness is required, the expert must clearly articulate and reference a standard of care by which the defendant's actions can be measured." *Robinson v. Washington Metro. Area Transit Auth.*, 774 F.3d 33, 39 (D.C. Cir. 2014) (internal quotation marks omitted). "An expert's personal opinions or unsupported assertions as to the national standard of care are insufficient." *Id.* (internal punctuation omitted). Expert testimony

> is not sufficient if it consists merely of the expert's opinion as to what he or she would do under similar circumstances. Nor is it enough for the expert simply to declare that the [defendant] violated the national standard of care. Rather, the expert must clearly articulate and reference a standard of care by which the defendant's actions can be measured. Thus the expert must clearly relate the standard of care to the practices in fact generally followed by other comparable facilities or to some standard nationally recognized by such units.

*Briggs*, 481 F.3d at 846 (internal ellipses omitted) (quoting *Clark v. District of Columbia*, 708 A.2d 632, 635 (D.C. 1997)). To establish that a particular practice represents the national standard of care, an expert must show that the practice "has been promulgated, or is generally known." *Id.* at 847. "Alternatively, an expert may support a purported standard by showing that it has been accepted as controlling in facilities and enterprises that are similar to defendants' facilities or enterprises." *Id.* "The expert must testify as to specific standards and must relate them directly to the defendant's conduct." *Id.* at 846-47 (internal punctuation omitted). "Absent such testimony, the jury will be forced to engage in idle speculation which is prohibited." *Id.* at

7

847.

Plaintiff has proffered the testimony of four experts in support of her claim—but their testimony is plainly insufficient to establish Cooper Carry and Hensel Phelps' standard of care. While each of the experts references Marriott's specification that flooring have a .60 coefficient of friction, as noted above, "internal policies—standing alone—cannot demonstrate the applicable standard of care." *Id.* at 848. Further, none of the experts explain what exactly the difference from .55 to .60 represents. Thus the experts have neglected to "relate [a specific standard] directly to the defendant's conduct." *Id.* at 846-47.

Further, the proffered testimony does not establish that a coefficient of friction of .60 represents a national standard of care. While all of the experts assert that the .60 coefficient of friction is "industry standard," they do not provide information to support that inference beyond their own ipse dixit. That is, they fail to "do more than simply state that a purported standard sets a national norm." *Id.* at 847. The expert reports do make passing reference external standards, such as the American Society of Testing Materials ("ASTM") and at least one expert, William Brogan, suggested in his deposition that the ASTM calls for flooring to have a coefficient of friction of .60.[4] But neither he nor the remaining experts establish that .60 is a national standard or that this standard "has been promulgated," "is generally known," or "has been accepted as controlling in facilities and enterprises that are similar to defendants' facilities or enterprises." *Id.* at 847. Thus the testimony does not provide a basis to conclude that a coefficient of friction of .60 has been accepted as nationwide practice. *See id.* at 847-48 (holding that unsupported statements that "OSHA standards have been used for years throughout the

---

[4] Brogan was not sure what the ATSM called for; when asked whether ASTM C1028 actually gave a number for the coefficient of friction standard, he said, "I'm not sure. I think." Brogan Tr. at 39:22. Another expert, Russell Kendzior, stated at his deposition that a coefficient of friction of .60 "constitutes a high-traction surface" according to another set of guidelines, which Marriott "should have" followed. Kendzior Tr. at 75:9-18.

United States in addressing robbery prevention in a wide variety of retail stores and facilities . . . do not demonstrate a national standard") (internal quotation marks and citation omitted).

Separately, the experts generally aver, referencing the ASTM, other external standards, and their own experience, that Defendants were obligated to install flooring that is "slip resistant." However, such vague standards are insufficient to establish the applicable standard of care. *See id.* at 847 (holding that standards OSHA standards indicating that retail establishments should "maintain adequate lighting" were "both too general and too vague to satisfy the requirements of D.C. law).

Accordingly, the expert testimony is insufficient to establish Cooper Carry and Hensel Phelps' standard of care, and summary judgment shall be granted.[5]

An appropriate order follows.

**May 20, 2019**                                             **BY THE COURT:**

                                                                                 **/s/Wendy Beetlestone, J.**

                                                                                 _____

                                                                                 **WENDY BEETLESTONE, J.**

---

[5] Because summary judgment in favor of Defendants is warranted for the reasons given, the Court need not address the other grounds—primarily relating to causation—argued by Defendants in their motions.